ESCALANTE 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-95-00695-CR







Steve Escalante, Appellant



v.



The State of Texas, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0953322, HONORABLE TOM BLACKWELL, JUDGE PRESIDING







PER CURIAM



 A jury found appellant Steve Escalante guilty of the offense of aggravated robbery with a
deadly weapon. Tex. Penal Code Ann. § 29.03 (West 1994). Appellant's punishment, enhanced by four
prior felony convictions, was assessed by the trial court at 25 years' confinement in the Texas Department
of Criminal Justice-Institutional Division. Appellant challenges his conviction by asserting error in (1) the
admission of the complainant's in-court identification, (2) the limitations placed on defense counsel's cross-examination of the complainant, and (3) limitations on the scope of defense counsel's final argument. We
will affirm the judgment of conviction.


SUMMARY OF RELEVANT FACTS


 On the evening of June 19, 1995, Esmerelda Diaz was walking east on 6th Street when
she noticed a man whom diagonally crossed the street in front of her. As he crossed he turned and looked
at Diaz. She testified that a nearby street light shown on his face and that she noticed that he had a
moustache. Diaz also noticed that the man had a ponytail, that he was Hispanic, and was wearing dark
pants and a "grayish or greenish shirt." Once the man reached her side of the street, he walked in front of
her. Diaz was looking down as she walked and lost sight of the man before noticing a shadowy figure and
a shiny object under a tree in her path. She attempted to veer away from the tree but stumbled. She
testified that her assailant then grabbed her and threatened to kill her if she did not surrender her purse. 
She further testified that her assailant was holding a "silver blade thing" that "looked like a knife." Diaz
looked the man in the face as he threatened her and recognized that he was the same man that had she had
seen earlier on the street.

 Benny Guerra, a friend of Diaz's, was driving west on 6th Street as the incident was taking
place. He testified that he saw a man grab Diaz and that he saw her break free and run into and across the
street. Guerra testified that he then drove to her aide. However, when he arrived he did not get out of his
car because the assailant was approaching the car while making threatening remarks. Guerra stated that
he could clearly see the man and that the man was attempting to conceal a knife. Guerra told Diaz to get
into the car. As they drove away, appellant walked west along 6th Street still in possession of the knife
and yelling at Guerra. Guerra reached a pay phone and called the police. 

 Once the police arrived, Guerra left Diaz with his car and directed the officers to the area
where he last saw the assailant. Appellant was arrested about a block away from the scene of the crime
as he sat at a bus stop. According to the testimony of the arresting officer, appellant was in possession of
a large folding knife with a retractable blade at the time of his arrest. After apprehending appellant, another
officer returned and picked up Diaz. The officer drove Diaz to a location on 6th Street that was across
from where appellant was being detained as a suspect. Diaz positively identified appellant as her attacker
both at the scene of his arrest and later, in court.


DISCUSSION


The Out-of-Court Identification

 In his initial point of error, appellant asserts that the trial court erred in overruling his
Martinez motion and permitting Diaz to make an in-court identification of him because her out- of-court
identification was impermissibly tainted. See Martinez v. State, 437 S.W.2d 842, 848 (Tex. Crim. App.
1996) (where pretrial identification procedures are challenged and upon motion of defense counsel, trial
court should hold hearing outside presence of jury). Appellant specifically notes Diaz's testimony during
the Martinez hearing that prior to her identification of appellant, the police told her that "[t]hey had gotten
some guy, and that Benny had identified him." Appellant argues that the pretrial identification procedure
in this case was so suggestive and conducive to a mistaken identification that the subsequent use of that
identification at trial resulted in a denial of his due process of law. See Stovall v. Deno, 388 U.S. 293
(1967); see also Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988). 

 The United States Supreme Court has formulated a two-step analysis to determine the
admissibility of an in-court identification. First, the reviewing court must determine whether the out-of-court
identification procedure was impermissibly suggestive; and second, whether that suggestive procedure gave
rise to a very substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U.S.
377 (1968); see also Cantu v. State, 738 S.W.2d 249 (Tex. Crim. App. 1987). The factors to be
considered in applying this analysis include: (1) the prior opportunity to observe the alleged criminal act;
(2) the existence of any discrepancy between any pre-lineup description and the defendant's actual
description; (3) any identification prior to lineup of another person; (4) the identification by picture of the
defendant prior to the lineup; (5) failure to identify the defendant on a prior occasion, and (6) the lapse of
time between the alleged act and the lineup identification. Thompson v. State, 480 S.W.2d 624, 627
(Tex. Crim. App. 1972); Martinez, 437 S.W.2d at 846. 

 Our review of the record reveals that Diaz testified that she was able to clearly see
appellant on the night of the robbery. She stated that she observed his features and dress both prior to the
robbery and during the criminal act itself. At no point in her testimony at trial or in her pretrial statement
does her description of appellant waiver, nor did she ever identify another individual as her assailant. 
Although Diaz did not identify appellant by photograph prior to lineup, she did identify him near the scene
of the crime on the night that it occurred. This identification took place close to the time of the criminal
episode and was not impermissibly suggestive. We conclude that the out-of-court procedure did not "give
rise to a very substantial likelihood of irreparable misidentification." See Simmons, 390 U.S. 377 (1968). 
Appellant's first point of error is overruled.


The Cross-Examination of the Complainant

 In his second point of error, appellant asserts that the trial court erred in improperly limiting
his cross-examination of Diaz. Appellant is specifically concerned with Diaz's testimony concerning the
amount of time between the criminal episode and the time that she called the police. During the Martinez
hearing, Diaz testified that approximately thirty to forty minutes passed between the robbery and her
identification of appellant near the scene of the crime. During direct examination, the prosecutor for the
State asked the following:


And how soon after the incident happened--where this man tried to take your purse with
the knife--were you at the pay phone, calling the police?



Diaz replied that it was "[p]robably five to ten minutes." On cross-examination, trial counsel for appellant
questioned Diaz about the amount of time that had elapsed between the incident and her call to the police. 
In the course of questioning, counsel mischaracterized Diaz's prior response as that it had taken thirty to
forty minutes between the attack and her call to the police, and asked why she changed her answer
between the hearing and her testimony in open court. The state objected and the objection was sustained. 
Outside the presence of the jury, the court informed defense counsel that counsel had misunderstood the
prosecutor's question and suggested that counsel check the court reporter's record for verification. At no
point during this exchange did the court prohibit counsel from cross-examining Diaz. 

 Our review of the record clearly reflects that counsel misunderstood the prosecutor's prior
question and Diaz's response. Hence, we conclude that the trial court did not abuse its discretion in limiting
appellant's cross-examination of Diaz. Appellant's right to confront and cross-examine the State's witness
in a public forum was not denied or infringed. Appellant's second point of error is overruled.


Appellant's Final Argument

 In his third and final point of error, appellant asserts that he was denied counsel at the
guilt/innocence phase of the trial when the trial court limited appellant's final argument. Appellant
specifically complains of the following exchange as defense counsel conducted his closing argument to the
jury:


Mr. Schulman: Neither Mr. Guerra nor Ms. Diaz ever told you anything about that knife. 
And for that reason, your first decision is really that the State has
absolutely not proven aggravated robbery. Even if you believe that Steve
Escalante is the person that was out there, that was the person that did
these things to Esmerelda Diaz, there is no aggravated robbery proven.


The State: Judge, I'm going to object to that.  That's a clear
mischaracterization of the law in this State -- clear.


The Court: Ladies and gentlemen, again, you take the facts from the witness
stand and the law from the Court's Charge.


Mr. Schulman: If you do not believe that you saw enough evidence to convince you
beyond a reasonable doubt that the knife is the knife that was -- if there
was a knife, it was shown to Esmerelda --


The State: Your Honor, I object. He is misstating the law in this case about
what we have to prove regarding the knife.


The Court: Objection sustained. 


 The denial of a proper jury argument constitutes a denial of the right to counsel. Johnson
v. State, 698 S.W.2d 154 (Tex. Crim. App. 1985); Riles v. State, 595 S.W.2d 858 (Tex. Crim.
App.1980). Attorneys for both the State and the defense, however, must confine their arguments to the
record; reference to facts that are neither in evidence nor inferable from the evidence is improper. Fuentes
v. State, 684 S.W.2d 333 (Tex. Crim. App. 1984). Because the State was only required to prove the
elements of the offense of aggravated robbery as set forth in the indictment, and was not required to prove
that the particular knife entered into evidence was the actual knife used by appellant at the time of the
criminal episode, the trial court correctly sustained the State's objection. Moreover, although neither Diaz
nor Guerra identified the knife at trial, both testified to seeing appellant wield a knife and the testimony of
the arresting officer corroborates that testimony. Hence we conclude that the State met its burden of proof
with regard to appellant's use of a deadly weapon, namely, a knife, in the course of committing a theft of
property. Appellant's third point of error is overruled.


CONCLUSION

 The judgment of conviction is affirmed.

Before Justices Powers, Jones and Kidd

Affirmed

Filed: May 8, 1997

Do Not Publish



>
hearing, Diaz testified that approximately thirty to forty minutes passed between the robbery and her
identification of appellant near the scene of the crime. During direct examination, the prosecutor for the
State asked the following:


And how soon after the incident happened--where this man tried to take your purse with
the knife--were you at the pay phone, calling the police?



Diaz replied that it was "[p]robably five to ten minutes." On cross-examination, trial counsel for appe